# Order

Michigan Supreme Court
Lansing, Michigan

February 9, 2007

125250

PEOPLE OF THE STATE OF MICHIGAN,
            Plaintiff-Appellee,

v

NICHOLAS JAMES JACKSON,
            Defendant-Appellant.
_____/

SC: 125250
COA: 242050
Oakland CC: 2001-177534-FC

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

By order of July 21, 2006, we remanded this case to the Oakland Circuit Court for an evidentiary hearing and directed the trial court to make additional findings regarding the defendant's request to present evidence regarding the defendant's stepbrother's alleged prior false accusation of sexual abuse.  On order of the Court, the evidentiary hearing having been held and the Oakland Circuit Court's findings having been received, we REVERSE the October 21, 2003 judgment of the Court of Appeals, and we REMAND this case to the Oakland Circuit Court for a new trial.

Upon retrial, the defendant must be afforded the opportunity to introduce testimony that the complainant has previously been induced by his father to make false allegations of sexual abuse against other persons disliked by the father.  MRE 404(b).  Such testimony concerning prior false allegations does not implicate the rape shield statute.  MCL 750.520j.  Further, the father's hearsay statement made to the police about the event in controversy should not be admitted because it constituted error in light of *Crawford v Washington*, 541 US 36 (2004).

WEAVER, J., dissents and states as follows:

I dissent and would deny leave to appeal because evidence of the nine-year old victim's alleged prior false accusation of sexual abuse was inadmissible under MRE 608(b).  The trial court did not err by excluding that evidence from the trial.  Moreover, if there was any error, it was harmless beyond a reasonable doubt.

This Court knows everything it needs to know to resolve this case.  Defendant, the victim's 19-year-old, 240-pound stepbrother, claims he woke up to find his penis in the mouth of his 9-year-old, 75-pound stepbrother.  The victim, who is below the age of consent, claims that defendant was awake and made him do it.  Defense counsel sought to

introduce testimony from other witnesses that the victim had made a prior false allegation of sexual abuse.

Defendant counsel made the following offer of proof at trial:

> We would be able to present evidence that [the victim] was removed from his mother when Anthony, Sr. and Cheryl Hines, Anthony Sr.'s mother, made, induced [the victim] to make allegations, false allegations of sexual molestation against Charlotte Hines' then fiancé. We would be able to offer testimony indicating that that case was investigated and it was found by the investigating authority that those statements were false.

Direct, in-court testimony about the victim's prior conduct provided by individuals other than the victim is inadmissible under MRE 608 as extrinsic evidence. MRE 608(b) provides:

> Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

On its face, MRE 608(b) bars the proposed direct testimony regarding the victim's alleged prior false allegation. Because the proposed testimony was not to be elicited during cross-examination, it is a waste of time and an insult to the victim and the trial court to remand this case on this issue.

Even assuming that a criminal defendant can be prejudiced by the exclusion of inadmissible evidence, any error in its exclusion in this case is harmless beyond a reasonable doubt.

YOUNG, J., dissents and states as follows:

I respectfully dissent from the order reversing the judgment of the Court of Appeals and remanding this case to the Oakland Circuit Court for a new trial. A jury convicted defendant of three counts of criminal sexual conduct. This case has been argued twice in this Court and been remanded to the trial court—all in aid of providing defense counsel with multiple opportunities satisfactorily to provide *some* evidence that there was error requiring reversal. Notwithstanding that this case has been sufficiently complex to warrant such an unusual expenditure of judicial resources, having become

frustrated with the futility of this sustained effort, the Court now simply reverses the jury verdict by order, the better to avoid having specifically to articulate why the verdict must be reversed and identify the errors on which this decision is predicated.  Given the fact that no one, not even *defendant*, contests the fact that defendant's penis was in his nine-year-old stepbrother's mouth on the night of November 16, 2000, I fail to see how the two evidentiary errors cited by the majority are anything but harmless.  Therefore, this Court should simply affirm defendant's convictions.

The only material dispute at trial concerned *why* defendant's penis was in his stepbrother's mouth that night.  Defendant argued that the nine-year-old complainant, AMH, was in fact the sexual aggressor, acting at the behest of Tony Hines, the complainant's father, as part of a conspiracy to have defendant removed from the family home.  According to defendant, as he slept, AMH performed fellatio on him so that Mr. Hines could catch them in the act, accuse defendant of sexually abusing AMH, and have defendant permanently out of his house and his life.  This theory of defense was fully presented at trial.  The jury considered and roundly rejected this story, convicting defendant of three counts of criminal sexual conduct after two hours of deliberation.

As noted, this case has a long procedural history in this Court.  We have heard oral argument on defendant's application for leave to appeal, full oral arguments after granting that application, and now we are considering the case after remanding for an evidentiary hearing in the Oakland Circuit Court.  After all this, the majority, through an order, points to two evidentiary errors and reverses defendant's convictions.  Neither withstands scrutiny.

According to the majority, the trial court erred by admitting Mr. Hines's statement to the police because under *Crawford v Washington*, 541 US 36 (2004), admitting the statement violated defendant's Sixth Amendment right to confront his accusers.  Assuming a *Crawford* violation, the error is still subject to a harmless error review.  See *Delaware v Van Arsdall*, 475 US 673, 681 (1986).  Because defendant objected to the admission of the statement, the proper standard of review is for a preserved constitutional error, which holds that an error is harmless "if [it is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  *People v Mass*, 464 Mich 615, 640 n 29 (2001)(quoting the standard announced in *Neder v United States*, 527 US 1, 18 [1999])(quotation marks omitted).

In this case, Mr. Hines told the police that he witnessed the fellatio, separated the boys, and told AMH's mother about the fellatio.  According to Mr. Hines's statement, he entered the room at the precise moment the fellatio occurred, and he promptly reported that activity to the police.  His version of the events bolsters defendant's theory that the fellatio was a trap.  Furthermore, Mr. Hines's statement is largely cumulative of defendant's *own admission* that his penis was in his nine-year-old stepbrother's mouth.  Because Mr. Hines's statement adds no additional incriminating evidence against

defendant and supports defendant's theory of defense, its admission was harmless beyond a reasonable doubt.

The majority also concludes that the trial court erred by excluding evidence that AMH and Mr. Hines allegedly had previously colluded to falsely accuse another man of sexual abuse. The primary error with this conclusion is that there is absolutely *no evidence* that AMH and Mr. Hines previously colluded to falsely accuse anyone of sexual abuse. This point is made abundantly clear by the fact that defendant never made any actual offer of proof of evidence to this effect. See *People v Jackson*, unpublished opinion per curiam of the Court of Appeals, issued October 21, 2003 (Docket No. 242050), p 7 ("Jackson has not made the requisite offer of proof to justify introduction of the evidence."). In addition, defense counsel was questioned by this Court during both oral arguments held on this case regarding what his proofs entailed regarding the alleged prior false allegation of sexual abuse. On both occasions, defense counsel was unable to provide an answer. Finally, at the hearing on remand ordered by this Court concerning defendant's offer of proof, defense counsel was unable to state what each of the proffered witnesses might say regarding evidence of the prior alleged collusion and, as to most, *defense counsel admitted that he had never spoken to his witnesses and had no personal knowledge regarding what their testimony might be*. Thus, as late as the hearing on remand, defense counsel offered no specific line of testimony about which any single witness (or the collection of them) would testify, much less that he had actual proofs that the prior alleged false allegation of sexual contact with AMH was the product of collusion. Apparently the majority has determined that this finding of fact was erroneous despite the fact that defendant has not pointed to anything in the record contradicting the trial court's holding.

Even if defendant had made a proper offer of proof, there is no proper basis for admitting the evidence (whatever it may be). First, as Justice Weaver correctly points out MRE 608(b) bars the use of extrinsic evidence of specific instances of conduct to attack a witness's credibility. Nonetheless, the majority apparently believes that the evidence is substantively admissible under MRE 404(b) as proof of a plan, scheme, or system between Mr. Hines and AMH. The majority declares that defendant "must be afforded the opportunity to introduce" this testimony of a common scheme of collusion. This holding completely usurps the trial court's function as the gatekeeper of evidence without any testing of the evidence under the rules of evidence. The most egregious aspect of this holding is that the majority makes this demand of the trial court without knowing what defendant intends to introduce to support his theory of a common scheme.

Furthermore, a prior act of collusion to fabricate an allegation of sexual abuse does not meet the similarity requirement under MRE 404(b) to serve as a similar scheme with defendant's theory that AMH operated as a sexual aggressor to "create" an act of sexual abuse. *People v Sabin (After Remand)*, 463 Mich 43, 63 (2000). Here, defendant does

not claim that he, like the "witness," was *falsely accused* of sexual abuse. Rather, defendant claims that the victim was actually the *sexual aggressor* in this case. The dissimilarity between the two acts precludes the admission of the alleged prior false allegation.

Finally, even assuming that the evidence is properly admissible under MRE 404(b), the trial court's error is harmless. Because this error is a preserved non-constitutional error, defendant has the burden of establishing that the exclusion more probably than not resulted in a miscarriage of justice. *People v Lukity*, 460 Mich 484 (1999). Introduction of this evidence could not have affected the jury's verdict and, thus, defendant has not satisfied his burden of proof that its exclusion has more probably than not resulted in a miscarriage of justice. Had the evidence been admitted, the jury would have been left to choose between defendant's story and the victim's version of events—the latter now tempered by the suggestion that the victim had falsely accused someone of sexual abuse in the past. Thus, in order for this evidence to have affected the outcome, the jury would have had to conclude that a child who made a false allegation of sexual abuse in the past is more likely to act as a sexual aggressor against his older stepbrother. To put it mildly, that is an enormous inferential leap. I find it highly implausible that any rational juror would have reached such a conclusion, especially in light of the extent to which defendant's story was impeached by his own admissions and the testimony of his mother. This testimony, offered by defendant, corroborated the fact that defendant was awake while his nine-year-old stepbrother performed fellatio on him. If the jury believed only defendant's mother's testimony, this would be a sufficient basis for the guilty verdicts.

Defendant's trial may not have been perfect. The trial court may have erred by admitting testimonial statements from the victim's father and did err by applying MCL 750.520j to exclude evidence regarding the victim's past accusations of sexual abuse. But because admitting Tony Hines's statement was harmless beyond a reasonable doubt, and because defendant has not satisfied his burden of proving that exclusion of the "evidence" of collusion more probably than not resulted in a miscarriage of justice, I believe defendant received a *fair* trial. That, as the United States Supreme Court has held, is all that is required by the constitution. See *Van Arsdall* at 681.

Accordingly, I vigorously dissent from the order granting defendant a new trial and would affirm the judgment of the Court of Appeals.

CORRIGAN, J., joins the statement of YOUNG, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

February 9, 2007

_Corbin R. Davis_
Clerk

t0206