PEOPLE v DALE WILLIAMS

Docket No. 119369. Submitted May 7, 1991, at Marquette. Decided
September 16, 1991, at 9:25 A.M. Leave to appeal denied, 439
Mich 926.

Dale F. Williams was convicted by a jury in the Delta Circuit
Court, Dean J. Shipman, J., of third-degree criminal sexual
conduct, and was sentenced to three to fifteen years in prison.
He appealed.

The Court of Appeals *held:*

1. The element of the offense that the victim was at least
thirteen but less than sixteen years old at the time of the
offense was established properly by the victim's testimony.

2. The court erred in relying on the rape-shield statute, MCL
750.520j(1); MSA 28.788(10)(1), in refusing to allow the defen-
dant to inquire about an alleged sexual assault of the victim by
her uncle five years before the trial where the defendant was
endeavoring to show that the victim had made prior false
accusations of rape. However, reversal is not required. The
court reached the correct conclusion in excluding the proffered
evidence and in declining the defendant's request for an eviden-
tiary hearing because the defendant did not offer any evidence
to establish that the victim had made a prior false accusation
of rape, but merely hoped to establish such evidence for im-
peachment purposes.

3. The court did not abuse its discretion in limiting the cross-
examination of the victim with regard to her diary because the
defendant had no basis for believing that cross-examination
concerning the diary would yield any relevant or helpful infor-
mation.

4. The victim's testimony regarding the occurrence of two
penetrations provided adequate evidence to support the court's
exercise of discretion in scoring the sentencing guidelines by
assessing twenty-five points for offense variable 12.

5. The court erred in assessing ten points under prior record

REFERENCES

Am Jur 2d, Criminal Law § 527; Habitual Criminals and Subse-
quent Offenders §§ 14, 15; Rape §§ 82, 88.

See the Index to Annotations under Chastity; Habitual Criminals
and Subsequent Offenders; Rape; Sentence and Punishment.

variable 5 of the sentencing guidelines for the defendant's prior misdemeanor convictions of disorderly conduct, trespass, impaired driving, and reckless driving on the basis that those convictions were drug related because the defendant was under the influence of alcohol at the time of the commission of those offenses. Alcohol-related offenses do not fall within the drug-crime group to which PRV 5 refers; the drug-crime group includes only those offenses related to the delivery, manufacture, or possession of a controlled substance as prohibited by the Public Health Code. Only the defendant's misdemeanor conviction of possession of marijuana is properly considered under PRV 5, resulting in a score of zero points. Therefore, the defendant is properly evaluated at a prior record level of A, rather than B. However, resentencing is not required, because the sentence imposed does not depart from the correctly scored guidelines recommendation, and the trial court explicitly stated on the record that such a rescoring would not affect the sentence imposed.

Affirmed.

WEAVER, J., concurred in the result only.

1. RAPE — RAPE-SHIELD STATUTE — EVIDENCE OF PRIOR FALSE ACCU-
SATIONS.

The rape-shield statute does not preclude the introduction of evidence to show that the victim has made prior false accusations of rape (MCL 750.520j[1]; MSA 28.788[10][1]).

2. SENTENCES — SENTENCING GUIDELINES — EVIDENCE.

A jury is not required to find the facts that form the basis for the scoring of the sentencing guidelines; all that is required is that evidence exists that is adequate to support a particular score.

3. SENTENCES — SENTENCING GUIDELINES — PRIOR MISDEMEANOR
CONVICTIONS — DRUG-RELATED OFFENSES.

Prior misdemeanor convictions of disorderly conduct, trespass, impaired driving, and reckless driving, for offenses that occurred while the defendant was under the influence of alcohol, cannot be considered as prior misdemeanor convictions of a drug-related offense for the purpose of determining a defendant's sentence under the sentencing guidelines; the drug-crime group referred to under prior record variable 5 of the sentencing guidelines includes only those offenses related to the delivery, manufacture, or possession of a controlled substance prohibited by the Public Health Code.

*Frank J. Kelley*, Attorney General, *Gay Secor*

*Hardy,* Solicitor General, *Thomas L. Smithson,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

*Steward, Peterson, Sheridan & Nancarrow* (by *Paul A. Peterson*), for the defendant on appeal.

Before: GRIFFIN, P.J., and SAWYER and WEAVER, JJ.

PER CURIAM. Defendant was convicted, following a jury trial, of criminal sexual conduct in the third degree. MCL 750.520d(1)(a); MSA 28.788(4)(1)(a). He was thereafter sentenced to three to fifteen years in prison. He now appeals and we affirm.

Defendant's conviction arises from the sexual penetration of the fourteen-year-old victim. At the time of the offense, the victim was working as a baby-sitter for the children of defendant's girl friend. According to the victim, defendant penetrated her vagina both digitally and orally. Defendant denied any sexual conduct with the victim.

Defendant first argues that he is entitled to have his conviction reversed because the prosecutor failed to prove an element of the offense, namely, that the victim was under the age of sixteen at the time of the offense. The only evidence of the victim's age that was introduced was the victim's own testimony that she was fourteen years of age at the time of the offense and would be fifteen years old on her next birthday. Defendant argues, as he did in the trial court, that the victim's testimony concerning her age was inadmissible hearsay, not falling within any exception to the rule. We disagree. It has long been established in this state that a person is competent to testify regarding his own age. *People v Colbath,* 141 Mich 189, 190; 104 NW 633 (1905). We also note that the

victim's testimony would appear to be admissible under MRE 803(19), though the prosecutor does not specifically argue that the testimony was admissible under this exception to the hearsay rule.

Defendant next argues that the trial court erred in refusing to allow him to inquire about an alleged sexual assault of the victim by her uncle five years before the trial. Defendant was apparently endeavoring to show that the victim's prior accusation was false and, therefore, impeach the credibility of her accusation in the instant case. The trial court refused to allow defendant to inquire into this previous accusation of sexual assault. For reasons other than those cited by the trial court, we conclude that the trial court reached the correct resolution of this issue.

The trial court based its ruling on the applicability of the rape-shield statute, MCL 750.520j(1); MSA 28.788(10)(1). The rape-shield statute could, presumably, apply to keep out evidence of a sexual assault where the defendant wished to use that evidence to establish the victim's promiscuity or some other character trait, an impermissible purpose for using evidence of past sexual conduct under the rape-shield statute. However, as the Supreme Court noted in *People v Hackett,* 421 Mich 338, 348-349; 365 NW2d 120 (1984), the rape-shield statute does not preclude introduction of evidence to show that a victim has made prior false accusations of rape. Such false accusations are relevant in subsequent prosecutions based upon the victim's accusations because the fact that the victim has made prior false accusations of rape directly bears on the victim's credibility and the credibility of the victim's accusations in the subsequent case, and preclusion of such evidence would unconstitutionally abridge the defendant's right to confrontation. See *id.* Thus, to the extent that

defendant desired and was able to introduce evidence that the victim made a prior false accusation of rape, and to the extent that the trial court relied upon the rape-shield statute in denying defendant's request, the trial court erred.

However, we do not believe that the defendant was able to make the requisite offer of proof to justify introduction of the evidence. Accordingly, he is not entitled to a reversal of his conviction. As the court explained in *Hackett, supra* at 350, the defendant is obligated initially to make an offer of proof with regard to the proposed evidence and to demonstrate its relevance to the purpose for which the evidence is sought to be admitted. If necessary, the trial court should conduct an evidentiary hearing in camera to determine the admissibility of the evidence, and at the hearing, the trial court has the responsibility of restricting the scope of cross-examination to prevent questions that would harass, annoy, or humiliate the victim and to guard against fishing expeditions. *Id.* at 350-351.

In the case at bar, defendant has been unable to offer any concrete evidence to establish that the victim had made a prior false accusation of being sexually abused by her uncle.[1] Rather, what defense counsel endeavored to do was to put the victim's mother and, apparently, one other witness on the witness stand and question them under oath concerning the truth or falsity of the victim's prior accusation, in hopes that their answers would reveal that the prior accusation was false. In short, defense counsel had no idea whether the

---

[1] The record does not fully set forth the facts surrounding the prior instance. Apparently, there was some allegation five years previously, when the victim was nine years old, that she had been molested by her uncle and that both the uncle and the victim had received counseling. No criminal charges were pursued against the uncle and, therefore, there had never been a determination by a court of the truth or falsity of the accusation.

prior accusation was true or false and no basis for believing that the prior accusation was false. Counsel merely wished to engage in a fishing expedition in hopes of being able to uncover some basis for arguing that the prior accusation was false.

However, as the Supreme Court stated in *Hackett, supra* at 350-351, an evidentiary hearing in this regard should not be utilized as a fishing expedition. In short, if defendant had evidence of a prior false accusation, that could be presented to the court. But defendant was not entitled to have the court conduct a trial within the trial to determine whether there was a prior accusation and whether that prior accusation was true or false. Accordingly, while we conclude that the trial court did rely too heavily on the rape-shield statute, the trial court nevertheless reached a correct conclusion in excluding defendant's proffered evidence and in declining defendant's request for an evidentiary hearing.

Defendant next argues that the trial court erred in refusing to allow defendant to learn the contents of the victim's diary. We disagree. Defendant argues on appeal that his attempted cross-examination at trial was proper under MRE 613, because he was attempting to obtain the prior statements contained in the victim's diary for impeachment purposes if they were inconsistent with the victim's testimony at trial.[2] Under MRE 613,

---

[2] The focus on the issue in the trial court appears to have been more concerned with the admissibility of the evidence under MRE 803(5), which establishes the recorded-recollection exception to the hearsay rule and which the trial court correctly concluded was not applicable because that exception requires that the witness have an insufficient recollection to enable him to testify fully and accurately at trial and no such showing was made with regard to the victim in the case at bar. However, accepting defendant's statement on appeal that the trial court misinterpreted defense counsel's endeavors in this regard and that defense counsel was, in fact, attempting to develop

within certain restrictions, a witness may be examined concerning a prior inconsistent statement in order to impeach the witness' credibility. In the instant case, however, defendant had no basis for showing that the victim's diary contained statements inconsistent with her testimony at trial. In fact, it does not appear that defendant was even aware of the existence of the diary until the victim testified on cross-examination that she kept a journal and had written about the sexual assault in the journal. This testimony was in response to a question on cross-examination concerning how the victim could be certain of the date of the offense.

The scope of cross-examination is within the discretion of the trial court. *Hackett, supra* at 347. In this case, defendant had no knowledge of the contents of the diary, and apparently did not even know of the existence of the diary until the victim mentioned it during cross-examination. Defense counsel again was going off on a fishing expedition in hopes of discovering some evidence that might be used for impeachment purposes. While, certainly, some latitude must be given to a party to develop such evidence, we cannot say that the trial court abused its discretion in limiting the scope of cross-examination in this regard when defense counsel had no basis for believing that cross-examination concerning the diary would yield any relevant or helpful information.[3]

prior inconsistent statements for impeachment purposes under MRE 613, we will analyze the issue as framed by defendant on appeal, namely, the admissibility of the evidence under MRE 613.

[3] Arguably, defendant could have requested production of the diary for review by defense counsel or the trial court for purposes of determining whether it did contain prior inconsistent statements that would be admissible at trial for impeachment purposes, but this is not the issue before us. Assuming, without deciding, that defendant had a right to have the diary produced, or at least reviewed by the judge in camera to determine if it contained any relevant information, defendant could then have proceeded with impeaching the victim with any

Defendant next argues that the trial court erred in the scoring of the sentencing guidelines by assessing twenty-five points for offense variable 12. The scoring of twenty-five points for OV 12 is appropriate where one criminal sexual penetration has occurred. However, the instructions in the sentencing guidelines manual provides that the one penetration that forms the basis for the conviction in first-degree CSC and third-degree CSC cases is not to be counted. Thus, scoring twenty-five points for OV 12 is appropriate where there were two sexual penetrations: one that forms the basis for the conviction and the additional one that forms the basis for scoring twenty-five points under OV 12. In the instant case, the victim testified that defendant penetrated her twice: once digitally and once orally. Defendant argues that it was improper for the court to conclude that two penetrations occurred because the jury instructions allowed the jury to convict defendant even if they found that only one of the two alleged penetrations occurred. However, we are aware of no requirement that a jury find the facts that form the basis for the scoring of the guidelines. Rather, all that is required is that evidence exists that is adequate to support a particular score. *People v Reddish,* 181 Mich App 625, 628; 450 NW2d 16 (1989). The victim's testimony regarding the occurrence of two penetrations provided adequate evidence to support the sentencing judge's exercise of discretion in the scoring of OV 12.

Next, defendant argues that the trial court impermissibly assessed ten points against defendant under prior record variable 5. We agree. The

inconsistent statements that might be found in the diary. This procedure, however, is materially different than merely allowing defendant to go off on a line of questioning that may or may not produce useful or relevant information.

assessment of ten points under this prior record variable is appropriate if the defendant has four or more prior misdemeanor convictions. However, as provided in the instructions for PRV 5 in the sentencing guidelines manual, a misdemeanor is to be scored only if it relates to one of several enumerated crime groups: assault, burglary, criminal sexual conduct, drug, fraud, larceny, property destruction, robbery, or weapons possession. See also *People v Anway (After Remand),* 189 Mich App 706; 473 NW2d 804 (1991). In the case at bar, the prior misdemeanor convictions were of trespass, impaired driving, reckless driving, possession of marijuana, and two counts of disorderly conduct. Defendant concedes that the prior misdemeanor conviction of possession of marijuana was properly scored, but argues that the trial court's ruling that the remaining five convictions were also properly scored because the offenses occurred following the consumption of alcohol by defendant was erroneous. We agree that the trial court erred, but do not believe that resentencing is required.

The prosecutor relies on this Court's opinion in *People v Jerovsek,* 172 Mich App 489; 432 NW2d 350 (1988), wherein this Court concluded that a prior misdemeanor conviction of a drunken-driving-related offense could be scored as a prior misdemeanor conviction because it was related to the abuse of alcohol and alcohol is a drug. Defendant, on the other hand, relies upon this Court's decision in *People v Reyna,* 184 Mich App 626; 459 NW2d 75 (1990), wherein this Court rejected the *Jerovsek* analysis and concluded that the drug-crime group under the sentencing guidelines involved only the drug offenses collected under the Public Health Code criminalizing the possession, delivery, or use of various controlled substances. The *Reyna-Jerovsek* conflict was resolved by this

Court's recent decision in *Anway, supra,* which followed the reasoning and conclusion of the *Reyna* Court. Thus, alcohol-related offenses do not fall within the drug-crime group, which includes only those offenses related to the delivery, manufacture, or possession of a controlled substance prohibited by the Public Health Code. Accordingly, the trial court's scoring of defendant's prior misdemeanor convictions of disorderly conduct, trespass, impaired driving, and reckless driving on the basis that they were related to the consumption of alcohol was incorrect.

We also note that the trial court stretched the concept of a drug-related offense even further than did the Court in *Jerovsek. Jerovsek* involved a drunken-driving-related offense, which can occur only with the consumption of a "drug" (alcohol). The trial court went beyond even the *Jerovsek* Court's reasoning by including offenses that do not require the consumption of alcohol, yet labeling the offenses drug-related merely because defendant was possibly under the influence of alcohol at the time of the commission of those offenses. The consumption of alcohol is not an element of either trespass or reckless driving. Similarly, while disorderly conduct may involve the consumption of alcohol, there are a number of ways of committing disorderly conduct not involving the consumption of alcohol. Thus, even under *Jerovsek,* only the impaired driving conviction would be scorable, and possibly the two disorderly conduct convictions, depending on whether those convictions were based on public drunkenness or on some other basis. Even *Jerovsek* does not justify the scoring of the trespass and reckless driving convictions as "drug-related" offenses.

In any event, consistent with this Court's decision in *Anway, supra,* the trial court erred in

scoring as prior misdemeanor convictions under
PRV 5 all of defendant's misdemeanor convictions
with the exception of the conviction of possession
of marijuana. Thus, for purposes of PRV 5, defen-
dant should have been deemed to have only one
prior misdemeanor conviction, for which the ap-
propriate score for PRV 5 is zero points. Because
the ten points scored for PRV 5 were the only prior
record level points assessed against defendant, he
should have had a total prior record variable score
of zero points and have been evaluated at a prior
record level of "A" rather than "B."

There remains, however, the question whether
resentencing is required. Normally, we would con-
clude that it is, because the change in the scoring
of the guidelines affects the guidelines recommen-
dation, which could conceivably affect the trial
court's sentencing decision. However, we note that,
in denying defendant's motion for resentencing,
although the trial court erroneously concluded
that the guidelines were properly scored, the trial
court also stated, "I was on the low end [of the
sentencing guidelines recommendations] in any
event and *rescoring would not work to his ben-
efit.*" Although the trial court did note that this
was not the basis for denying the motion for
resentencing, its incorrect belief that the guide-
lines were correctly scored being that basis, we are
nevertheless satisfied that the trial court would
impose the same sentence on defendant were we to
remand for resentencing. Moreover, the sentence
imposed, a minimum of thirty-six months, remains
within the guidelines recommendation under de-
fendant's adjusted guidelines scoring, the new rec-
ommendation being from twenty-four to sixty
months in prison.

Because the sentence imposed does not depart
from the correctly scored guidelines recommenda-

tion and the trial court explicitly stated on the record that a rescoring would not affect the sentence imposed, we conclude that resentencing is not necessary. Accordingly, we need not address defendant's final issue, whether a different judge should be assigned if there were to be a resentencing.

Affirmed.

Weaver, J. *(concurring in the result only)*. I agree that the conviction and sentence in this case should be affirmed, but write separately to state that I follow *People v Anway (After Remand),* 189 Mich App 706; 473 NW2d 804 (1991), only because Administrative Order No. 1990-6, 436 Mich lxxxiv, requires I do so.

Were it not for Administrative Order No. 1990-6, I would continue to follow *People v Jerovsek,* 172 Mich App 489; 432 NW2d 350 (1988). The dissent in *Anway* found *Jerovsek* more persuasive for the following reasons:

1. The official United States pharmacopeia recognizes alcohol as a drug.

2. The second edition of the Michigan Sentencing Guidelines, unlike the first edition, contains no list of scorable misdemeanors.

3. The fact that the drug offenses and the OUIL offenses fall within different codes is an insufficient distinction for determining whether OUIL offenses should be scored as prior misdemeanors.