*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DEONTE DEQUNN HALL,

       Defendant-Appellant.

UNPUBLISHED
February 18, 2021

No. 347290
Genesee Circuit Court
LC No. 16-039631-FC

Before: BOONSTRA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (victim under 13 years of age), two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under 13 years of age), accosting a child for an immoral purpose, MCL 750.145a, disseminating sexually explicit matter to a minor, MCL 722.675, and indecent exposure, MCL 750.335a. The trial court sentenced defendant to concurrent terms of 25 to 40 years in prison for the CSC-I conviction and 123 days in jail for each of the other convictions, with credit for 123 days served. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from defendant's sexual assault of the victim, LC, on numerous occasions when she was less than 13 years of age. LC referred to defendant as her uncle because defendant's brother, Jimmy Mitchell (Mitchell), is the father of LC's half-sister. LC testified that she would often visit the defendant's home when she was younger, and that defendant sexually assaulted her on several occasions during these visits. Relevant to the issues on appeal, LC testified that the sexual abuse involved, among other acts, defendant forcing his penis between her buttocks. A sexual assault nurse examiner (SANE) examined LC and found injuries to LC's genital and anal area that were consistent with LC's description of the abuse. Defendant's mother (who lived with defendant) testified, however, that defendant was never left unsupervised with LC. Prior to trial, the trial court granted the prosecution's motion in limine and precluded the defense from introducing evidence that LC had allegedly falsely accused Mitchell of inappropriately touching her in 2010. The jury convicted defendant as described. This appeal followed.

-1-

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence at trial was insufficient to support his CSC-I conviction because there was no evidence of sexual penetration. We disagree.

We review de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). We review "the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. Conflicting evidence and disputed facts are to be resolved by the trier of fact." *Id*. (citations omitted). We review issues of statutory interpretation de novo. *Id*. at 737.

Defendant was charged with CSC-I under MCL 750.520b(1)(a), which provides that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person" and "[t]hat other person is under 13 years of age." Therefore, the elements of CSC-I in this case are: "(1) the defendant engaged in sexual penetration, (2) with a person under 13 years of age." *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014). There is no dispute that JC was less than 13 years of age when the charged incidents occurred. But defendant argues that the prosecution failed to introduce evidence of sexual penetration. " 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body." MCL 750.520a(r).

In *People v Anderson*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345601), slip op at 3, lv pending, this Court recently held, as a matter of first impression, that intrusion into the crease of the buttocks, but not into the anal cavity itself, is sufficient to satisfy the penetration element of CSC-I. *Id*. at ___; slip op at 3-4. We concluded "that the Legislature intended the term 'anal opening' to be read broadly to include both the anal canal and the crease of the buttocks or, in laymen's terms, as the victim explained, the void between the 'butt cheeks.' " *Id*. at ___; slip op at 4. We also elaborated on the rationale for that conclusion:

> First, this Court has already concluded that the "genital opening" of a female includes the labia. We see no reason why the Legislature would define "genital opening" broadly, but restrict "anal opening" to the anal canal. Second, the defining difference between a sexual penetration and sexual contact is the intrusion into the victim's body, rather than the unwanted touching of sensitive areas of the body. The statute broadly prohibits sexual intrusions of all types, regardless of the cavity entered. In this sense, the statute protects a person's bodily integrity and there can be no question that defendant's conduct in this case sufficiently intruded upon the victim's bodily integrity to qualify it in the same class as other recognized sexual penetrations. [*Id*. at ___; slip op at 4.]

In this case, JC testified that defendant pushed his penis up against her butt and that his penis went "[b]etween the cheeks but not like all the way in[,]" in other words "not to where the poop comes out." She further stated that defendant then took his penis "out of the crack." Accordingly, JC's testimony was sufficient to establish that defendant's penis entered the crease

of her buttocks, which is sufficient to establish the penetration element of CSC-I. *Id*. at ___; slip op at 4.

Defendant argues, however, that *Anderson* was wrongly decided and requests that this Court invoke the conflict-resolution procedure set forth in MCR 7.215(J).[1] We decline to do so. As discussed earlier, we relied in *Anderson* on the analogous definition of "genital opening," which includes the labia. We also concluded that the intrusion upon the victim's bodily integrity was of the same nature as other recognized sexual penetrations. *Anderson*, ___ Mich App at ___; slip op at 4. Although defendant argues that the analogy between the crease of the buttocks and the labia is misplaced and that the level of intrusion is different, we believe that the analogy in *Anderson* is sound.

Defendant also argues that the broad definition of "anal opening" would lead to absurd results. He argues, for example, that grabbing a person's buttocks would constitute CSC-I if a person's hand entered the crease of the buttocks, or that wiping an infant's buttocks while changing a diaper would constitute CSC-I. However, defendant's arguments or their rough equivalents may also be made regarding the definition of "genital opening." It is not impossible that the Legislature intended this result. See *Reidenbach v City of Kalamazoo*, 327 Mich App 174, 188; 933 NW2d 335 (2019). ("[The absurd-results doctrine] may only be invoked when it is 'quite impossible' that the Legislature could have intended the result.") Accordingly, we are not persuaded that *Anderson* was incorrectly decided and decline to declare a conflict.[2]

For these reasons, there was sufficient evidence to support defendant's CSC-I conviction.

### III. JURY INSTRUCTIONS

Relatedly, defendant argues that the trial court improperly instructed the jury regarding the definition of anal opening. We disagree.

This Court reviews a claim of instructional error involving a question of law de novo. *People v Craft*, 325 Mich App 598, 604; 927 NW2d 708 (2018).[3]

---

[1] We note that this appeal was filed before *Anderson* was decided; however, defendant addressed *Anderson* in its reply brief on appeal.

[2] In any event, because *Anderson* is at present pending on appeal before our Supreme Court, MCR 7.215(J)(3)(b) currently prohibits either polling the Court regarding a conflict panel or convening such a panel.

[3] As a threshold matter, the prosecution argues that defense counsel waived this issue by approving the jury instructions. We disagree. "A party's explicit and express approval of jury instructions as given waives any error and precludes appellate review." *People v Spaulding*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 348500); slip op at 8. Defendant was convicted at his third trial after his two previous trials resulted in mistrials. Defense counsel indeed did not object to the instruction at the third trial. However, at defendant's second trial, defendant's prior

As we explained in *People v Spaulding*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 348500); slip op at 8:

> A defendant has the right to a properly instructed jury. [T]he trial court is required to instruct the jury with the law applicable to the case and fully and fairly present the case to the jury in an understandable manner. Jury instructions are reviewed in their entirety to determine if there is error requiring reversal. Jury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories if the evidence supports them. [Quotation marks and citations omitted].

In this case, the trial court instructed the jury as follows: "Anal opening, that term anal opening, for the charge of criminal sexual conduct in the first degree does not require penetration of the anal canal itself. Anal opening includes the crease of the buttocks and the area immediately surrounding the anal opening in addition to the anal canal." This instruction was consistent with the definition of anal opening provided in *Anderson*, ___ Mich App at ___; slip op at 4.[4] Therefore, the instruction was not improper.

## IV. EXCLUSION OF EVIDENCE

Defendant also argues that the trial court abused its discretion by granting the prosecution's motion in limine excluding evidence of an allegedly false prior accusation of sexual assault made by JC. We disagree.

"A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Bailey*, 330 Mich App 41, 50; 944 NW2d 370 (2019). "[W]hether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *Denson*, 500 Mich at 396. "Whether a defendant's Sixth Amendment right of confrontation has been

---

counsel objected to the prosecution's request for a special instruction, and was overruled. The prosecution argues that defendant's trial counsel was required to renew the objection at the third trial. The prosecution, however, fails to provide any caselaw to support the assertion that a party must renew an objection to a jury instruction after the court has definitively ruled on the issue at a prior trial. Counsel is generally not expected to raise futile objections. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). We conclude that defendant did not waive this issue and, for that reason, we also need not consider defendant's alternative argument that his counsel was ineffective for failing to object to the jury instruction.

[4] Although *Anderson* was issued after defendant's trial, we noted in that case that "our unpublished cases leave little doubt that this Court interprets the term 'anal opening' . . . to include both the anal canal and the crease of the buttocks." See *Anderson*, ___ Mich at ___, slip op at 4 (unpublished citations omitted). The jury instruction therefore reflected this Court's current, albeit unpublished, interpretation at the time of trial.

violated is a question of constitutional law that this Court reviews de novo." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018).

## A. FACTUAL BACKGROUND

On October 19, 2017, the trial court held an evidentiary hearing on the prosecution's motion. As an offer of proof, defendant's trial counsel stated that defendant's mother would testify that, in 2010, she was at the home of the victim's aunt, Lavongela Howell (Howell), and that Mitchell was also present. According to the proffer, defendant's mother would testify that JC, then five or six years old, came downstairs crying and said that Mitchell had put his hand down her pants and touched her private parts, but that Mitchell then denied touching JC and, after JC was further questioned, JC said that she had only said that because Mitchell would not give her some snacks.

Several witnesses were called at the hearing to testify regarding the incident. Defendant's mother testified to the incident as described. Howell and Mitchell both denied that JC had ever accused Mitchell of putting his hand down her pants. JC also denied that she had ever made such an accusation.

The trial court determined that the issue before it was not governed by the rape-shield statute, MCL 750.520j, because it involved the absence of sexual activity, and because JC's statements in 2010, even if false, did not rise to the level of an accusation. The trial court noted the conflicting testimony regarding whether the alleged incident had ever happened, and ultimately determined that the evidence was inadmissible under MRE 403. The trial court found that the probative value of the evidence was low because of the dissimilarities between the 2010 event and the disclosures that JC had made that led to the case before it. It also found that admission of the evidence would be prejudicial because it would confuse the issues for the jury. Finally, the trial court found that exclusion of the evidence would not deny defendant a fair trial and that defendant could still cross-examine JC and present his witnesses. Accordingly, the trial court granted the prosecution's motion in limine and precluded the defense from introducing evidence of the alleged prior accusation of sexual assault.

## B. ANALYSIS

The trial court erred by concluding that the rape-shield statute did not govern the admission or exclusion of defendant's proffered evidence. Nonetheless, it reached the correct result. The rape-shield statute, MCL 750.520j, generally bars evidence of a victim's prior sexual activity not related to the alleged incident. *Duenaz*, 306 Mich App at 91. In *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984), the Michigan Supreme Court explained that, in certain situations, evidence of a victim's prior sexual conduct "may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation." For example, "the defendant should be permitted to show that the complainant has made false accusations of rape in the past." *Id*.

Accordingly, as we explained in *People v Williams*, 191 Mich App 269, 272; 477 NW2d 877 (1991):

[T]he rape-shield statute does not preclude introduction of evidence to show that a victim has made prior false accusations of rape. Such false accusations are relevant in subsequent prosecutions based upon the victim's accusations because the fact that the victim has made prior false accusations of rape directly bears on the victim's credibility and the credibility of the victim's accusations in the subsequent case, and preclusion of such evidence would unconstitutionally abridge the defendant's right to confrontation. [Citation omitted.]

The defendant, however, is required to make an offer of proof to justify the introduction of the evidence and demonstrate the relevance of the evidence for to the purpose for which it is sought to be admitted. *Id*. at 273.

If necessary, the trial court should conduct an evidentiary hearing in camera to determine the admissibility of the evidence, and at the hearing, the trial court has the responsibility of restricting the scope of cross-examination to prevent questions that would harass, annoy, or humiliate the victim and to guard against fishing expeditions. [*Id*.]

In *Williams*, 191 Mich App at 273, this Court concluded that the defendant had failed to offer any concrete evidence to establish that the victim had made a prior false accusation of being sexually abused by her uncle. We noted:

The record does not fully set forth the facts surrounding the prior instance. Apparently, there was some allegation five years previously, when the victim was nine years old, that she had been molested by her uncle and that both the uncle and the victim had received counseling. No criminal charges were pursued against the uncle and, therefore, there had never been a determination by a court of the truth or falsity of the accusation. [*Id*. at 273 n 1.]

We explained that the defendant's attorney "had no idea whether the prior accusation was true or false and no basis for believing that the prior accusation was false. Counsel merely wished to engage in a fishing expedition in hopes of being able to uncover some basis for arguing that the prior accusation was false." *Id*. at 273-274. We concluded that the "defendant was not entitled to have the court conduct a trial within the trial to determine whether there was a prior accusation and whether that prior accusation was true or false." *Id*. at 274.

In this case, unlike in *Williams*, defendant offered the testimony of a witness regarding the alleged prior false accusation and argued that the evidence was being offered for its effect on JC's credibility. Evidence bearing on a witness's credibility is always relevant. See *Spaulding*, ___ Mich App at ___; slip op at 11. Defendant thus made a sufficient threshold showing of relevancy and his offer of proof went beyond a mere "fishing expedition." The trial court therefore properly conducted an evidentiary hearing and heard testimony from those allegedly involved. As noted, all of the other witnesses allegedly present at the time of the incident denied that it had occurred at all.

In ruling on the motion, the trial court primarily relied on its finding that there was no accusation, possibly because no formal criminal charges were filed. This Court's statement in

*Williams* suggested that the lack of criminal charges was relevant. See *Williams*, 191 Mich App at 273 n 1. However, our caselaw has not stated that formal charges are required in order for a prior false accusation of sexual conduct to be admissible. Nonetheless, even if the trial court mistakenly believed that JC's statements could not constitute an accusation, it correctly determined that defendant had not offered sufficient proof that the accusation was even made. The trial court therefore could have properly excluded the evidence on the basis of the rape-shield statute alone. *Williams*, 191 Mich App at 273.

Additionally, we agree with the trial court that, even apart from the rape-shield statute, the evidence was properly excluded under MRE 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The trial court found that the probative value of the evidence was low because of the dissimilarities between the instant case and the prior incident. The probative value was also lessened by the conflicting evidence regarding whether the accusation had even been made, and the danger of confusing the issues was therefore magnified. If the defendant's evidence had been admitted, several other witnesses would have been called to testify and, given their testimony at the hearing, presumably would have denied that the incident occurred. The jury then would have had to determine the credibility of those witnesses, decide whether the accusation had been made, decide whether the accusation was false, and then decide the impact on this case, essentially requiring a trial within a trial. The trial court did not abuse its discretion by determining that the probative value of a statement made by JC when she five or six years old, eight years before trial, simply did not warrant the risk of confusing the issues or misleading the jury. Therefore, the trial court did not abuse its discretion by excluding the evidence.[5]

Affirmed.

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Michelle M. Rick

---

[5] Because we conclude that the evidence was properly excluded, we need not address the prosecution's argument that the evidence was also inadmissible under MRE 608(b).